The next case, number 24-1951, Kathleen F. Hebert et al. v. Carissa Donahue. At this time, would counsel for the appellant please introduce himself on the record to begin? Thank you. Good morning, your honors. I'm pleased to call attorney Don Correa for the original defendant and the appellant in this case. Let me clean my throat for one second. There's water on counsel's table. Your honors, I believe a brief history of litigation is relevant in this case. All the papers are in the appendix. The case started when the plaintiff, Kathleen Hebert, commenced an action in the Plaintiff Probate Court. My motion to dismiss, which was granted, the case was refiled here in the First Circuit Court, I should say. At that particular point in time, based upon a preliminary hearing, Judge Woodlock determined that in fact it should be refiled. Complaints for interpleader and declaratory relief, which my client, Tiffany Hebert, who was deceased during the proceedings and is now represented by her daughter, Carissa Donahue, a duly appointed PR of Tiffany's estate in the Plaintiff Probate Court. From that point in time, the issue was what to do with the $344,000 MetLife insurance policy, which was provided by the government to its employees. Beyond that particular point, parties were given a memorandum in order by Judge Woodlock that basically stated his position on the case, but invited the parties to further brief it and further support their position, which the parties have done. As a result of the affidavits and additional pleadings that were accomplished, two issues in particular were raised. One was the mental competency of Gary Hebert, the decedent, and the other was the genuineness of the services of the government. So as a result of that, both my brother counsel and I had agreed that Magistrate Judge Kelly would take over the case, which she did. At that particular point, based upon another preliminary hearing and based upon Judge Woodlock's request for live in-court testimony by the parties and any relevant witnesses, at that particular point in time, Judge Woodlock did order the Postal Service and OPM to have affidavits submitted as part of the presentation, which were done. The in-court testimony consisted of three people on our side, which was Carissa Donahue, daughter of Tiffany, her sister, and her aunt, and they all testified. On the other side, there was Kathleen Hebert and the two witnesses on this form SF-2823 that testified in court. After those proceedings were concluded in two sessions, Judge Kelly asked what was additionally needed because the track of the case at that point was motions for summary judgment, and I indicated that we needed some additional discovery on the case because of the kind of unorthodox method in which that proceeded through the court system. This was one case that was also hung up through the pandemic inactions in the 21-22 time period. You're discussing desired discovery after the discovery deadline. I'm sorry, Your Honor. If I understand you correctly, your concern here is discovery to be conducted after the discovery deadline. No. Well, it was after the original discovery deadline, but Judge Kelly honored that request and extended the discovery deadline until May 24, 2024, because we had requested that, and she granted it. As a result of that additional window for discovery, we sent out subpoenas to Gary Hebert's medical providers, and the medical providers took quite a while to get back to us, but then stated that they would not honor those requests except in two cases. One, if the patient, now deceased, represented by Kathleen Hebert's physician, would authorize the release of those records, or two, by court order. Why didn't you seek a court order? Why didn't you immediately seek a court order when they gave you that response? We did. We immediately sought the court order in March of 2024, and the court had turned it down right afterwards, and there was still a two-month period. Did you file a motion to compel? What did you file? I filed a motion to have the court order the medical records to be released. And what did the court say? What did the court say? Yes, how did the court rule? The court denied the motion, which to us seemed inconsistent with the fact that the same court... Did the court deny the motion, or was the court order just silent? No, denied it. And so therefore, we thought that was inconsistent with the fact that the additional period of discovery was granted, and we were right away after that discovery was extended. Before even asking for a court order, did you try to subpoena? Because with a subpoena, you should have been able to obtain the documents. Didn't you subpoena the documents? Didn't you request a subpoena? Did you subpoena the documents? Yes, we did originally. The very first thing we did was subpoena the documents, and the provider said, we won't give them to you without either consent by the decedent or the representative. And did you file a motion to compel? I used the alternative of the motion to have the court order granted to have those records released. When the other side objected to the release of the documents, we filed a motion that the court should grant the release of those records. That's what we did. Did you file that motion within the deadline for discovery? Right away. Not the summary, Your Honor. We filed it within the motion of extension of the deadline for the discovery, yes. I thought your brief refers to an emergency motion for discovery. And the other party says that was subject to Rule 6B1 as a motion to extend the discovery deadline. And your reply accepts that characterization at page 12. Now I'm confused. Now you're saying there wasn't a motion to extend discovery? In open session, the court granted my request for an extension of discovery and granted it. We were within a two-month time frame right there, so we had plenty of time. The subpoenas had already been served on the providers, and that's all we needed to do was have the court authorize the release of those records. And that was denied, which again seemed inconsistent with why grant the extension of time for discovery if we can't do discovery. The other issue involved is the fact that I sent the notice in open court. Judge Kelly asked, what other discovery? I said I wanted to do the deposition of Kathleen Heber. And so we did send the notice of deposition. In my brief, we summarize and quote certain sections of the responses, email back and forth, and originally it seemed like my brother counsel was going to agree on a date and then at the very end said, no, I'm not going to allow an additional motion, additional deposition. At that point in time, the discovery time had ended. And so therefore, we were left with a lack of that additional discovery. In this particular case, it's important that we wanted to follow up on a lot of the issues and questions that were raised in the open court. I don't remember the court specifically denying your request. I mean, do you, of course we'll check the docket and the record, but do you by any chance have that court order with you today? Were you saying that you're relying on? Yes, we did. The motion for the court order for the discovery was filed with the court and it was administratively denied. We didn't appear on them, argument on that motion. So at that particular point, we were left with the form. The form 2823 is the relevant form of the Federal Processing Center, the Human Research Shared Services Center. And so part of what was involved here were three affidavits that the court had ordered. One was from Chancey Fuller, who was a supervisor of the Resource Center. The other one was Kathleen Keeley, who was a program analyst for the Life and Actuarial Benefits Office. And the third one was from the OPM, a Jonathan Klein. All three of those affidavits were filed with the court and all three of them indicated that form SF-2823, when it was originally submitted, was denied. It was denied because it was incomplete. There was a section in the form, section C, that required certain information to be provided. That information was, in particular, the address of the employee. It also required a determination whether the person was the assignee of those benefits. And it also required a confirmation of the fact that none of the witnesses were, in fact, beneficiaries of the form. That's why the form was originally turned down. Realizing that the form was turned down, who had been prepared by Kathleen Hebert, and we know it was prepared by Kathleen Hebert, what they did is they took the original form, they filled in the address of Gary Hebert, they checked off the boxes that it was not an assignment and that no witnesses had a beneficial share, and they sent the form back in. Unfortunately, the form was deficient for three particular reasons. First of all, it was sent after Gary Hebert's death. Second of all, it was sent by fax, which was an unapproved method. It had to be an original. And also it... Well, the district court relied on the first affidavit that got rejected, but the court's determination was that that form contained all of the necessary information for it to be a valid designation of beneficiaries. Right. Judge Warlick actually said that the information that would have been provided by Section C was redundant. But our position is clearly that those three items that are required on the form are not redundant. Now, in the normal course of events, you might consider the fact the address of the person might be somewhat insignificant, but in this particular case, it was not insignificant. He had an apartment with his wife, Tiffany, in Wareham, and he went from the hospital to his ex-spouse's house. The allegation in the case is the fact that he reconciled. We don't believe there was any evidence, and we don't believe there was any reconciliation whatsoever. The truth of the matter is that Tiffany was in the hospital, and she wasn't home to receive Gary once he was released from the hospital. He had a serious advanced stage of cancer. He basically knew that he was dying, and as a result of all that, he needed care. The fact of the matter is, on the mental competency issue, at one point when my client visited him in the hospital, he thought my client was his wife, Tiffany. That's his state of mental acuteness. Yeah, but is that in the record? That's not in the record. Well, it just points out the fact that during this particular time, we seriously doubt the fact that he had mental competency. Okay. So as a result of that, they filed a second form. They filed it after his death. They filed it through an incomplete method. Now, the cases that were cited by the judge... Well, the court didn't rely on the second form, so it doesn't matter. That's correct. The court zeroed in on the first form. That's correct. That's correct. But the second form was submitted because they knew... It doesn't matter. ...that the first form had been rejected. It doesn't matter. All the cases cited... The court didn't rely on it. I'm sorry? The court didn't rely on the second form, so it doesn't matter. Well, it... You need to tell us why you think the first form was insufficient. That's true. Yes. But if the second form had been done properly, it would have actually been completed, it would have been on time, it would have been an original, and it might very well have carried the day, except for the mental competency and undue influence cases. We say that because Gary was totally dependent in the last days of his life, and the Bradway case that I cite in my brief makes it very clear that when this kind of a document is executed near death, it should be looked at with tremendous scrutiny in terms of the issue of mental competency and undue influence, both of which we claim occurred in this particular case. The case should have at least been denied cross motions of summary judgment and proceeded to trial. That didn't happen. In any event, the first form was not redundant. The Schedule C information was necessary and essential in order to process that form. If you didn't know the address of the employee, if you didn't know whether it was an assignment, if you didn't have those items verified, then as both Fuller, Healy, and Klein indicated, three fairly high responsible positions in the government processing of these matters all said it was incomplete and was not valid. And every case cited by Judge Woodlock in his memorandum in order, which Judge Kelly basically rubber-stamped and did not go to readdressing of that particular issue, all those cases are distinguishable, every one of them, because in some cases there was a signature that was missing. In another case, the Postal Service had accepted the form, we don't have that true here, and finished the remaining information by some collateral method. My brother points out in his brief this Bonner case, which was relied upon by the lower court. Counselor, your time is up, sir. Okay. Thank you. Thank you, Counsel. At this time, would Counsel for Affiliate please introduce himself on the record to begin? Thank you. Chris Alexa for the appellees, and may it please the court. The district court got it right. Judge Woodlock's memorandum in order is very clear on what the statute requires for a designation of beneficiary, and that is that it's in writing, that it's witnessed by two disinterested witnesses, that it's signed by the insured, and that it's received by the employing office prior to the insured's death. And that's exactly what happened in this case, and there's no evidence that those things did not happen. The testimony of the two disinterested witnesses was very clear. They stated on the record in court that when Mr. Hebert was signing this document, he was clear, he was lucid, he was himself. There's no evidence to the contrary. Regarding my brother's discussion about whether he sought an order within the discovery period. Well, at the evidentiary hearing, was there testimony about his medical condition, the fact that he was suffering from brain cancer and that he had displayed some unclarity? There was, Judge. Okay. So why wouldn't that be enough to defeat summary judgment? Because the law is, there's a presumption of mental capacity when you sign a designation of beneficiary form, and that presumption can only be overcome with competent medical testimony from an expert witness. Here there was no medical testimony, no competent medical evidence. That's correct. I believe it was the daughter who said, I saw him like a month and a half before he died, and he wasn't doing too well. That's the only evidence, correct? That's the only evidence that is competent in this case. There was some testimony about overhearing what a doctor said to Mr. Hebert, but that isn't enough. Procedurally, did the court deny their request to obtain the medical records? No, there was no request, official request, where they were seeking to compel the production of these records until the discovery period closed. They had four years of knowing that these records were going to be necessary to their case. And as late as November of 2019, their filings made clear that these records are something that they're going to seek, and they didn't do it for over four and a half years. Well, they didn't file a motion to compel, but they filed something that contained a request to obtain medical information. I'm not sure. I assume the court didn't treat that as a motion to compel. Correct. But are you in agreement that the court denied whatever that was or that the court was silent? The court did not address it because it was a scheduling conference memo. It wasn't a request for – it was not supposed to be a request for any records. It was a discussion about whether – what evidence was further needed and what steps were going to be taken. And my brother and I had differing opinions about what was necessary. But it was not a – was it – it was not – from what you're saying, it was not a motion, Judge Kelly, please compel these medical providers to provide X evidence within 10 days. Here's the form order. Please sign this so we can get this. That didn't happen? Correct. And you're right, Judge. There was no – nothing for her to sign to give permission for these records to be obtained. In the general course of things, you provide in order for the judge to at least be able to consider in terms of obtaining medical records if it goes that route. And with respect to the request they did make, didn't the judge expressly find that in substance it was a motion to extend the discovery deadline and denied it under 6B1? I believe that's what the judge did for the second request. I – as you'll note, there's no opposition to a request for medical records until the discovery period had closed. So is there anything else I can answer about that? Well, just depending on – something was filed pursuant to a scheduling order. And whatever that was that we call it, it did talk about a desire to obtain medical records. Sure. And there was another – Is it fair to say that the judge didn't understand it to be anything such as a specific motion to compel production? From what I remember and from what I've read from Judge Kelly's memorandum on that issue, she understood that that's what the defendants wanted to obtain, but they hadn't filed anything to obtain it. They just said, we would like these – a judge to order these records to be produced, but they didn't describe what records they were, what doctors they were, what physicians were even subpoenaed. So there was really nothing for her to sign at that point or to order until they actually provided the motion after the discovery period deadline. And that's the one that she treated as a motion for extension that she denied? Correct, Judge. Okay. Correct. And to be fair, I mean, there was no explanation of why these records weren't obtained earlier. There was no good cause standard met. There was no excusable neglect even mentioned as to why these records weren't obtained when they knew four and a half years prior to the date they requested them, they were necessary to their case. And turning briefly back to the issue of mental competency, the day that Mr. Hebert signed that form is the only day that's really relevant in determining what his capacity was to sign that designation form. And all of the evidence pointed one way, and it was that he was clear and lucid and knew what he was doing. And finally, I think a lot of the confusion. I mean, you don't disagree, though, that the medical records could have contradicted had that statement contained in the affidavits had counsel been able to obtain them. I mean, he could have been suffering from the records could have showed he was suffering from some type of degenerative disease that would make it impossible for him to have been competent. They could have, Judge, but, I mean, they could have shown a lot of different things. They were never obtained through the fault of the plaintiff or the defendants here. And likewise, even if they got these records and these records tended to show that, they would still need to have an expert witness to come and say that, you know, on this date this medical condition caused him to not have capacity to be able to understand what he was doing. Let me also ask. Had they obtained those records, they, of course, would have to produce those. Forget about the expert now, but if those records, let's say, showed he was taking XY medication that you handled insurance claims before, you know, this is kind of like something, you would have probably gotten your own expert and maybe your own expert would have said they're right, you know, but you were not put in that position, correct? I was not given that opportunity, and we obviously would have proceeded in that fashion. I do these kind of cases often, and getting medical records is not a difficult thing. If you have four years to get them and you don't get them, I mean, that's kind of a serious issue. And I think in terms of the case law cited by my brother, I think there's just a general misunderstanding about whether strict compliance with the preference in the designation of beneficiaries, that order means strict compliance with completing a form which is not statutorily required. All that's required that there be a writing that's signed by the insurer, witnessed by two disinterested witnesses, and received by the— Because the statute just requires what you said, two witnesses before the death, and that's it. Correct. The form could require 300 other things, and if you comply with the statute, that should be enough under Massachusetts law. That's correct. That's correct, Judge. And so with that, I don't have anything further to present, other than we ask that you affirm the lower court's well-reasoned and well-written orders, and allow my clients to finally have some closure in this case. Okay. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.